UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DONALD PIERCE

VERSUS

TURNER INDUSTRIES GROUP, LLC.

CIVIL ACTION

NO. 10-631-BAJ-DLD

## RULING AND ORDER

This matter is before the Court pursuant to a Motion for Summary Judgment filed by Defendant, Turner Industries Group, LLC. ("Turner" or "Defendant") (doc. 21). Plaintiff, Donald Pierce ("Plaintiff"), opposes Defendant's motion (doc. 26). Defendant has replied to Plaintiff's opposition (doc. 29). This suit is brought under the federal question jurisdiction of this Court under the provisions of 28 U.S.C. §§ 1331.

## BACKGROUND

I.  **Uncontested Facts**

Pursuant to LR 56.1, Defendant has submitted a statement of undisputed material facts (doc. 21-2). Plaintiff, however, has contested some of those facts, as permitted under LR 56.2 (doc. 26-1). Therefore, pursuant to LR 56.2, certain material facts will be deemed admitted for purposes of this motion.[1]

---

[1] LR 56.2 provides:
> Each copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be

The uncontested facts are as follows:

- Plaintiff worked for Defendant Turner, an industrial construction and maintenance service company, "off and on" for over 15 years as a welder (doc. 21-2 ¶¶ 1-2).

- The parties agree that Plaintiff worked on 23 different jobs for Turner or Turner-related companies from October 1, 1993 through November 20, 1999. According to Defendant, Plaintiff resigned from two of those jobs, and on the remaining 21 jobs, he was laid off in good standing (doc. 21-2 ¶ 3).

- The parties agree that from 1999 to 2008, Plaintiff worked on nine different occasions for Turner or Turner-related companies in Louisiana and other parts of the country. According to Defendant, Plaintiff resigned from four of those jobs, was laid off on two, had an invalid identification on one, and was terminated for unsatisfactory job performance on another (doc. 21-2 ¶ 4).

- The parties agree that for the May 2008 positions, Defendant was hiring welders for a project for the Sinclair refinery in Sinclair, Wyoming, and the Sinclair refinery inspectors traveled to Baton Rouge to personally oversee welder testing (doc. 21-2 ¶¶ 12-13).

- The parties agree that the pipe welders were tested on both chrome and carbon steel pipe (doc. 21-2 ¶ 17).

- The parties agree that the tests were performed at Welding Testing Laboratory, Inc. in Baton Rouge on either pipe or structural steel, and one of the inspectors that Sinclair sent to Baton Rouge was John E. ("Ed") Newell (doc. 21-2 ¶¶ 13-14).

- Defendant alleges that at the lab in Baton Rouge, Plaintiff was tested first on carbon steel and then chrome and he failed the carbon steel test (doc. 21-2 ¶ 18).

- The parties agree that Defendant permitted Plaintiff to go to Wyoming as a welder on chrome because Plaintiff passed the chrome test (doc. 21-3, at 5).

served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.

- Plaintiff alleges that, shortly after the rig welders' arrival in Wyoming, they all protested and refused to work because they allegedly were not being paid their truck allowance. Plaintiff further asserts that the welders "were joking that Plaintiff had organized the protest (doc. 21-2 ¶ 29)."

- According to Defendant, Mr. Newell failed Plaintiff on his carbon steel re-test in Wyoming and informed Turner's Quality Control Supervisor, Mark Pruyn, that because he failed the test, Plaintiff would not be allowed to weld carbon steel pipe at the Sinclair facility (doc. 21-2 ¶ 39).

- According to Defendant, Mr. Todd Wiedmer ("Mr. Wiedmer"), a Turner Industries Superintendent, informed Plaintiff that because he had failed the carbon steel re-test, he could not continue to be a rig welder. Plaintiff was told that rig welders needed to be able to perform both chrome and carbon steel welds (doc. 21-2 ¶ 43).

- Defendant further alleges that Turner management told him that it could not continue to pay Plaintiff as a rig welder because he was only certified in chrome welding (doc. 21-2 ¶ 46).

- Plaintiff alleges that, during the testing, an unnamed white welder tested next to him and his weld was inferior to Plaintiff's (doc. 21-2 ¶ 59).

- Plaintiff further alleges that while he had only one certification (on chrome), other unnamed welders with only one certification were automatically given two certifications and/or were inferior welders. Defendant alleges that these unnamed welders included African American welders (doc. 21-2 ¶ 60).

- Defendant alleges that Todd Wiedmer made the statement to his foreman to "keep this n----- busy (doc. 21-2 ¶ 60)."

## ANALYSIS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to the non-movant and draws all reasonable inferences in her favor. *Coleman v. Houston Independent School District*, 113 F.3d 528 (5th Cir. 1997). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2411, 91 L. Ed.2d 202 (1986).

The non-movant's burden, however, is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986).

Plaintiff asserts that he was the subject of unlawful discrimination in violation of the Constitution and the laws of the United States of America, and was terminated from employment because of his race, in violation of 42 U.S.C. § 2000e-2(a)(1). Additionally, he asserts that his termination was retaliatory in violation of 42 U.S.C. § 2000e-3(a).

## I. Title VII Discrimination Claim

Under Title VII, an employer cannot "discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.]" 42 U.S.C. § 2000E-2(A). An employee can prove discrimination through direct or circumstantial evidence. *Portis v. First Nat. Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir.1994).

### A. Direct Discrimination Claim

The Fifth Circuit has held that discriminatory comments in the workplace can constitute direct evidence of discrimination. "In *Rubinstein v. Adm'rs of the Tulane Educ. Fund*, the Fifth Circuit set forth criteria for establishing a claim for direct discrimination. The court stated that:

"In order for comments in the workplace to provide sufficient evidence of discrimination, they must be: 1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." 218 F.3d 392, 400–01 (5th Cir.2000) (quoting *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir.1996)).

Here, Plaintiff asserts that Mr. Todd Weidmer allegedly made the statement to his foreman to "keep this n----- busy (doc. 21-2 ¶ 64)." The comment cited by Plaintiff fails to meet the direct discrimination criteria for several reasons.

5

First, Plaintiff asserts no facts to suggest that the statement was made proximate in time to the complained-of adverse employment decision. Plaintiff did not report the allegation nor does he have corroborating testimony to establish a time.

Second, Plaintiff does not assert that Mr. Wiedmer's alleged comment affected the decision to terminate his employment at the Sinclair, Wyoming refinery. Plaintiff continually affirms that "he does not consider Mr. Wiedmer to be the source of discrimination (doc. 21-2 ¶ 64)." Aside from the cited comment, Plaintiff focuses the sum of his allegations on Mr. John E. Newell, who was in charge of administering the carbon-steel test that led to the termination of Plaintiff's employment. Because Plaintiff does not connect this comment with the adverse employment decision, Plaintiff has not alleged sufficient facts to support his direct discrimination claim.

### B. Circumstantial Evidence of Discrimination

Plaintiff principally alleges circumstantial evidence of discrimination. The Fifth Circuit has held that "where the plaintiff offers circumstantial evidence, the *McDonnell Douglas-Burdine* framework is required." See *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 179-80 (5th Cir.1999). Under this framework, "the plaintiff must establish a *prima facie* case of discrimination, which, if established, raises a presumption of discrimination." *Id*. To show a *prima facie* case of discriminatory discharge, a plaintiff must first establish that he (1) is a member of a protected class, (2) suffered an adverse employment action, (3) was qualified

6

for his position, and (4) was replaced by someone outside of the protected class or, in cases of disparate treatment, that similarly situated employees of a different race were treated more favorably. *Stone v. Parish of East Baton Rouge*, 329 Fed. Appx. 542, at *3 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007); *Spears v. State of Louisiana*, 767 F. Supp. 2d 629, *5 (M.D. La. Feb 9, 2011).

Here, Plaintiff has not established a *prima facie* case of discrimination. First, Plaintiff has not alleged sufficient facts to show that he was qualified for the position. Plaintiff asserts that he was qualified for the welder position because he held a certification in chrome welding, which was a more difficult welding certification than the carbon steel certification. However, Defendant states that: 1) a certification in carbon steel welding was a requirement for the Sinclair Refinery Welder Position, 2) the majority of the work needed at the Sinclair refinery was carbon steel welds, and 3) the company terminated employees who failed the carbon steel test and retained the employees that passed. Furthermore, Plaintiff admits to failing the carbon steel welder test the first time at the Baton Rouge lab, a circumstance where he does not claim discrimination (doc. 26-1 ¶¶ 18-22).

In response, Plaintiff alleges that other welders were allowed to remain on the job with only one certification. However, Plaintiff offers no factual support for this assertion. Defendant rebuts this assertion by citing to records of the employees retained after the carbon steel tests.

7

Furthermore, Plaintiff has not alleged sufficient facts to satisfy the fourth prong of the *McDonnell Douglas-Burdine framework*. Plaintiff fails to show that (1) he was replaced by someone outside of his protected class or (2) that similarly situated employees of a different race were treated more favorably. *Stone*, 329 Fed. Appx. 542, at *3 (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007)). Here, Plaintiff does not allege sufficient facts to indicate that he was replaced by someone outside of his protected class. Defendant asserts that other employees that passed the carbon steel test and obtained a position at the Sinclair refinery included African Americans, Caucasians, and Hispanics.

Plaintiff alleges that a Caucasian welder was treated more favorably during his carbon welding re-test because he was purportedly given more opportunities to pass this test. This does not show more favorable treatment by Defendant. Plaintiff had two opportunities to pass the carbon steel test, one in Baton Rouge and one in Sinclair. Defendant concedes that some Caucasians continued on to the Sinclair job. Defendant also asserts, however, that the proportion of African Americans who passed welding tests in May of 2008 was higher than that of Caucasians. Finally, Plaintiff fails to address the fact that some of the employees who passed the carbon steel test and continued on the project were Hispanics and African Americans.

8

## II. Title VII Retaliation Claim

Plaintiff claims that his termination was retaliatory under 42 U.S.C. § 2000e-3(a). Under this provision, an employer is prohibited from discriminating "against any of his employees . . . because he has opposed any [unlawful employment] practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

In order to establish a claim for retaliation, the plaintiff must demonstrate: "(1) that [he] engaged in activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse employment action." *Evans v. City of Houston*, 246 F.3d 344, 352 (5th Cir. 2001).

Here, Plaintiff has not alleged sufficient facts to establish a *prima facie* case for his retaliation claim. Both parties agree that immediately after Plaintiff's complaint of racism, Defendant offered Plaintiff a position as a single hand welder on structural steel, earning $30 per hour. Additionally, Plaintiff cannot establish a causal link existed between his complaint of race discrimination and the adverse employment action. Even before Plaintiff complained of race discrimination, Defendant stated that it could not hire him for the Sinclair refinery or pay him as a rig welder because he lacked a carbon steel certification.[2]

---

[2] Plaintiff also alleges retaliation due to his participation in a welders' strike in Wyoming. The Court disregards this claim for several reasons. 1) Nearly all welders participated in the strike and Plaintiff neither led nor organized the

9

Accordingly, the Court finds that Plaintiff has not established that Defendant's comment constitutes direct discrimination, or that Defendant's reasons for denying the Plaintiff the Sinclair Refinery Welder Position constituted circumstantial discrimination. Plaintiff is also unable to establish a claim for retaliation under 42 U.S.C. § 2000e-3(a). Because Plaintiff has failed to allege sufficient facts to support his discrimination claims, Defendant is entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (doc. 21) is hereby **GRANTED**.

Baton Rouge, Louisiana, September 25, 2012.

---

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

---

strike and 2) Mr. Newell, the Sinclair inspector that administered the carbon-steel test, asserts that he was unaware of the strike.